UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

CARLA MATTHEWS, and
all similarly situated individuals,

    Plaintiffs,

v.

HYATT CORPORATION,
an Illinois corporation,

    Defendant.

Case No.:

Hon.

## COLLECTIVE AND CLASS
## ACTION COMPLAINT WITH JURY DEMAND

Plaintiff, Carla Matthews, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Hyatt Corporation (hereinafter referred to as "Hyatt" or "Defendant"), and states as follows:

## INTRODUCTION

1.  This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Carla Matthews, individually and on behalf of all similarly situated persons ("Plaintiffs"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. §§ 95-

25.1, *et seq.*, and breach of contract under the common law.

2.     Defendant employed Plaintiffs as hourly at-home call center employees, called "Remote Associates."

3.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Remote Associates, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses, which are prevalent in the industry. (***Exhibit A***).

4.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

5.     More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

6.     Defendant failed to pay Plaintiffs and all similarly situated employees for their pre-shift time spent booting up their computers, logging into required computer networks and software applications, and reviewing work-related e-mails

and other information prior to the start of their shift.

7.     Defendant also failed to pay Plaintiffs and all similarly situated employees for their post-shift time spent shutting down, logging out of required computer networks and software applications, and reviewing work-related e-mails and other information after the end of their shift.

8.     Finally, Defendant failed to compensate Plaintiffs and all similarly situated employees for mid-shift, off-the-clock work attributed to technical problems with the computers, networks, programs/applications, and/or phones.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

10.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

11.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's Remote Associates engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

12.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members are citizens of different states.

13.     A private party may also bring an action for damages for breach of contract under the common law.  Plaintiffs' breach of contract claims originate from the same facts that form the basis of their federal claims.  Thus, the Court has supplemental jurisdiction over Plaintiffs' breach of contract claims pursuant to 28 U.S.C. §1367.

14.     Plaintiffs' NCWHA claims originate from the same facts that form the basis of their federal claims.  Thus, the Court also has supplemental jurisdiction over Plaintiffs' NCWHA claims pursuant to 28 U.S.C. §1367.

15.     This Court has personal jurisdiction over Defendant because it does business within the state of North Carolina.

16.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs Remote Associates in this district, conducts business in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

17. Plaintiff, Carla Matthews, is a resident of Candler, North Carolina, and has been employed by Defendant as an hourly Remote Associate from August 2016 to the present. Ms. Matthews signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit B***.

18. Additional Opt-In Plaintiffs were or are still employed by Defendant as Remote Associates during the past three years and their consent forms will also be filed in this case.

19. Defendant is a Delaware corporation with its headquarters and principal offices located at 71 S. Wacker Drive, 14th Floor, Chicago, Illinois 60606.

20. Defendant is registered to do business in the State of North Carolina and its registered office in North Carolina is located at 327 Hillsborough St., Raleigh, North Carolina 27603.

21. Defendant's website states that their employees are "at the heart of Hyatt, and [they] care for them so they can be their best – at work and beyond."[1]

22. Furthermore, since their founding in 1957, "Hyatt has been dedicated to authentic hospitality underpinned by a commitment to responsible business." Furthermore, their "approach to governance, ethics and human rights is driven by

---

[1] *See* https://thrive.hyatt.com/en/thrive/our-people/overview.html (last visited on 7/13/17).

[their] purpose: [t]o care for people so they can be their best."[2]

23.     Defendant claims that it requires "all employees, including executive officers and members of [their] Board of Directors, to comply with [their] Code of Business Conduct and Ethics as well as all applicable laws and standards for legal obligations, ethics and business conduct."[3]

24.     Upon information and belief, Defendant employs hundreds, if not thousands, of Remote Associates in at least 23 states across the country.

## GENERAL ALLEGATIONS

25.     Upon their hire, Remote Associates are typically paid at a rate of $11.00 per hour.

26.     Upon their hire, Remote Associates are required to complete a training period of approximately 75 days.

27.      During their training, Remote Associates are taught, *inter alia*, how to open and use Defendant's computer networks and software programs/applications, how to track their time, the importance of attendance and schedule expectations, and Defendant's policies related to each topic.

28.     Once training is completed, Defendant requires the Remote Associates to follow daily computer login procedures, which is documented in Defendant's *Post*

_____

[2] See https://thrive.hyatt.com/en/thrive/responsible-business/overview.html (last visited on 7/13/17).
[3] *Id*.

*Training Quick Reference Guide*, which states:

### Daily Log-in Procedures

It is important to compete these steps in the order they appear below.

1. Log into the computer.
2. Log into Reserve (not Reserve Training).
3. Log into Outlook and read any emails.
   - You should be checking your email periodically throughout the day. If you do not check your email, you will miss vital information required to do your job.
4. Log into IEX Webstation (in your Internet Favorites) to see your schedule.
5. Log into Sync.
6. Pull up Passkey.
7. Pull up the Time Clock and OSCC (but do not clock-in/log-in).

### When your shift starts….

1. Clock into the Time Clock.
2. Log into OSCC.
3. Begin taking calls by clicking "Available" in OSCC.

This document is in Defendant's possession.

29.    Defendant also requires all Remote Associates to sign a *Remote Associate Program Agreement*, which dictates: (a) computer equipment requirements; (b) job expectations; (c) technical support issues; and (d) time, attendance, and schedule expectations.  This document is in Defendant's possession.

30.    Defendant's *Remote Associate Program Agreement* states that "Remote Associates are not exempt from the overtime requirements of the Fair Labor Standards Act and will be required to record all hours worked in a manner designated

by the organization."

31.     Defendant's *Remote Associate Program Agreement* states that "[f]ailure to comply with any of the requirements of the time, schedule and attendance expectations can result in the immediate termination of the Remote Associate agreement."

32.     Defendant's *Remote Associate Program Agreement* states that "any failure to adhere to this agreement and all other Hyatt policies will subject me to disciplinary action, up to and including immediate removal from this program or termination of employment."

33.     All of Defendant's Remote Associates use similar computer networks, software programs, and applications in the course of performing their job responsibilities.  These programs and applications are integral and an important part of the Remote Associates' work and they cannot perform their jobs without them.

34.     In order to perform their job, Plaintiffs and all other Remote Associates are required to boot up and log in to various computer networks, software programs and applications, including those referenced above, in order to access information necessary to perform their job functions.  This pre-shift process takes substantial time on a daily basis ranging from eight (8) to thirty-two (32) minutes per day, and even longer on days where Defendant's computer networks and programs are not working properly.

35.     However, Plaintiffs and all other Remote Associates are not actually "clocked in" for their shifts until after the computer boot-up and login process is complete (*see* ¶ 27, *supra*), meaning that Plaintiffs and all other Remote Associates work at least eight (8) to thirty-two (32) minutes each shift for which they are never compensated.

36.     The pre-shift off-the-clock time Plaintiffs and all other Remote Associates spend booting up and logging in to their computers directly benefits Defendant.

37.     The pre-shift boot-up and login process is an integral and indispensable part of the Remote Associates' job responsibilities.

38.     Additionally, at the end of the day, Plaintiffs and all other Remote Associates are required to logout of the time keeping system before shutting down their computers, which results in additional unpaid off-the-clock work.

39.     The post-shift work performed after disconnecting from Defendant's network and logging out of the timekeeping system takes between five (5) to twenty (20) minutes at the end of each shift.

40.     The post-shift off-the clock time Plaintiffs and all other Remote Associates spend logging out shutting down directly benefitted Defendant.

41.     The post-shift logout and shutdown process was an integral and indispensable part of the Remote Associates' job responsibilities.

42.     Despite knowing Plaintiffs and all other Remote Associates performed work before and after their scheduled shifts, Defendant and its managers failed to make any effort to stop or disallow this pre- and post-shift work and instead suffered and permitted it to happen.

43.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other Remote Associates booted up and logged into their computers and logged out and shutdown each day, along with the time they logged into their telephone systems.

44.     Defendant possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and all other Remote Associates experienced down time due to technical issues.

45.     Despite its ability to track the amount of time Plaintiffs and other Remote Associates spend in connection with the pre-shift boot-up and login process and post-shift shutdown and logout process, and technical downtime, Defendant failed to pay Plaintiffs and other Remote Associates for the off-the-clock work they performed each shift.

### A.     Pre-Shift Off-the-Clock Work

46.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other Remote Associates are required to start up and log into various secure computer networks and software programs/applications in order to access

information.

47.     Defendant's *Remote Associate Program Agreement* states that "Remote Associates are expected to read email and the Yapmo posts on Hyattconnect immediately upon logging onto their computer."

48.     The pre-shift start-up and login process takes substantial time on a daily basis with said time ranging from eight (8) to thirty-two (32) minutes per day, or even longer when technical issues arise.  Before clocking in, Defendant's Remote Associates are required to undertake the process identified above in ¶ 28, *supra*.

49.     Defendant's Remote Associates complete this process before each shift; however, they are not actually "clocked in" for their shifts until *after* they start-up their computer, establish a connection to Defendant's VPN, open the essential programs/applications, enter their credentials (password and username), open several essential web-based programs, log into their phone system, and change their status to "available" to take calls.

50.     As a result, Plaintiffs and other Remote Associates spend between eight (8) to thirty-two (32) minutes at the beginning of each shift performing off-the-clock (uncompensated) work for Defendant.

51.     The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other Remote Associates directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable

to their job duties and responsibilities as Remote Associates.

**B.** **Post-Shift Off-the-Clock Work**

52.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other Remote Associates are required to shut down and logout of the computer programs and applications *after* they log-out of Defendant's timekeeping system. The post-shift logout and shutdown process takes substantial time on a daily basis with said time ranging from five (5) to twenty (20) minutes per shift.

53.     At the end of the day, after removing themselves from "available" status in the phones, Plaintiffs and all other Remote Associates must complete the following essential work activities in chronological order:

- First, Plaintiffs and all other Remote Associates are required to log off from OSCC. This step takes approximately thirty (30) seconds, but is performed on-the-clock;

- Next, Plaintiffs and all other Remote Associates are required to clock out of the Kronos timekeeping system. At this point, Plaintiffs and other Remote Associates are off-the-clock;

- After clocking out, Plaintiffs and all other Remote Associates are required to close all other applications, including: IEX Webstation, Reserve, Sync, and Passkey. This step took approximately four (4) to five (5) minutes;

- Before closing Outlook, Plaintiffs and all other Remote Associates are required to read any e-mails they were unable to read while taking calls. This step generally takes anywhere from one (1) and fifteen (15) minutes; and

- Lastly, Plaintiffs and all other Remote Associates are required to shut-down their computers.

54.     Pursuant to the above process, Defendant fails to pay Plaintiffs and all other Remote Associates for between five (5) to twenty (20) minutes of off-the-clock work performed after each shift.

55.     The unpaid post-shift, off-the-clock, work performed by Plaintiffs and all other Remote Associates after each shift directly benefits Defendant and the tasks undertaken in connection with the post-shift off-the-clock work are integral and indispensable to the Remote Associates' job duties and responsibilities.

## C.     Exemplary Pay Periods to Illustrate Pre- and Post-Shift Damages

56.     Examples of specific workweeks where Defendant failed to pay Plaintiff Carla Matthews all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

### Pay Period of 8/07/2016 to 8/20/2016

- Matthews worked 82.32 hours and was paid at a rate of $11.00 per hour for the first 40 hours of each workweek and $16.50 per hour for each hour over 40 in the workweek.

- Matthews's paystub reflects that she was paid for 2.32 hours of overtime at a rate of $16.50 per hour, meaning that she worked over 40 hours in at least one of the two workweeks in the pay period.

- With pre-shift time of 8-32 minutes per shift and post-shift time of 5-20 minutes per shift, Matthews should have been paid an additional 65 to 260 minutes at her overtime rate of $16.50 for each week.

*Exhibit C*, Matthews Pay Stub.

**Pay Period of 8/21/2016 to 9/03/2016**

- Matthews worked 82.6 hours and was paid at a rate of $11.00 per hour for the first 40 hours of each workweek and $16.50 per hour for each hour over 40 in the workweek.

- Matthews's paystub reflects that she was paid for .58 hours of overtime at a rate of $16.50 per hour, meaning that she worked over 40 hours in at least one of the two workweeks in the pay period.

- With pre-shift time of 8-32 minutes per shift and post-shift time of 5-20 minutes per shift, Matthews should have been paid an additional 65 to 260 minutes at her overtime rate of $16.50 for each week.

*Exhibit D*, Matthews Pay Stub.

### D. Technical Malfunction Spent Off-the-Clock (Tech-Time)

57.     In addition to the off-the-clock time spent during the startup/login and shutdown/logout procedures outlined above, Plaintiffs and other Remote Associates frequently spent significant time waiting and assisting Defendant's technical support team (referred to by Defendant as the "Help Desk") in troubleshooting problems they encountered with the network and/or their computer systems and applications.

58.     When Plaintiffs and other Remote Associates encountered technical difficulties with their networks, programs, applications, and/or phones, they were required to change their status to "unavailable" and clock-out of Defendant's timekeeping system while they worked with the Help Desk to correct the technical problems.  This often required Remote Associates to wait on hold for an appreciable amount of time.

59. After the problem was corrected, Plaintiffs and other Remote Associates were required to complete a work ticket that documented the technical issue. This form was also prepared off the clock.

60. This off-the-clock time directly benefitted Defendant, was compensable time, and is a substantial element of damages in this lawsuit.

61. Upon information and belief, Defendant maintains records that will illustrate the time spent by Plaintiffs and other Remote Associates working with the Help Desk to correct problems with their computers, networks, programs/applications, and/or phones.

## E.     Defendant Benefitted from the Remote Associates' Off-the-Clock Work

62. At all relevant times, Defendant required and directly benefitted from the off-the-clock work performed by Plaintiffs and all other Remote Associates in connection with the pre- and post-shift activities described above.

63. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Remote Associates.

64. At all relevant times, Defendant was able to track the amount of time Plaintiffs and all other Remote Associates spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiffs and all other Remote Associates for the off-the-clock work they performed.

65.     At all relevant times, Plaintiffs and all other Remote Associates were non-exempt hourly employees, subject to the requirements of the FLSA.

66.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the Remote Associates in order to pressure them into performing pre- and post-shift work, off-the-clock.

67.     Defendant expressly trained and instructed Plaintiffs and all other Remote Associates to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

68.     Defendant instructed Remote Associates to have all work applications and systems fully loaded before they clocked-in, so that they were prepared to take calls the moment they clocked-in at the start of their shift.  Similarly, at the end of the shift, Defendant instructed Remote Associates to clock-out before closing all work applications and systems to make certain they were clocked-out at the moment they stopped taking calls.

69.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the Remote Associates of wages owed for the pre- and post-shift activities they performed. Because Defendant's Remote Associates typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

70.     Defendant knew or should have known that the time spent by Plaintiffs

and other Remote Associates in connection with the pre-, mid- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

71.     Unpaid wages related to the off-the-clock work described herein is owed to Plaintiffs at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

72.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly remote associates who worked for Hyatt at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

73.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

74.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

75.     Consistent with Defendant's policies and practice, Plaintiffs and the

proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond 40 hours in a workweek.

76.     All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

77.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

b.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work; and

c.     Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

78.     Defendant is aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

79.     Defendant's unlawful conduct was widespread, repeated, and consistent.

80.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

81.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift startup/login time and the amount of post-shift logout/shutdown time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

82.     There are many similarly situated current and former Remote Associates who were underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

83.     Plaintiffs estimate the FLSA Collective, including both current and former Remote Associates over the relevant period, includes hundreds, if not thousands of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

84.     Plaintiff Matthews brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly remote associates who worked for Hyatt at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiff Matthews reserve the right to amend this definition if necessary.

85.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff Matthews reasonably estimate there are hundreds, if not thousands, of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

86.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

> a.     Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each session is compensable time;

b.   Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown and logout activities is compensable time; and

c.   Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract.

87.   Plaintiff Matthews's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff Matthews's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

88.   Plaintiff Matthews will fully and adequately protect the interests of the Rule 23 Nationwide Class and she retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Matthews nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

89.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

90.     This case will be manageable as a Rule 23 Class action.  Plaintiff Matthews and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

91.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

92.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

93.     Plaintiff Matthews brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly remote associates who worked for Hyatt at any time during the applicable statutory period in North Carolina.*

(hereinafter referred to as the "Rule 23 North Carolina Class").  Plaintiff Matthews reserves the right to amend this definition if necessary.

94.     The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical.  Plaintiff reasonably estimates there are hundreds of Rule 23 North Carolina Class members.  Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

95.     There is a well-defined community of interest among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class.  These common legal and factual questions, include, but are not limited to, the following:

> b.     Whether the pre-shift time Rule 23 North Carolina Class members spend on startup and login activities each session is compensable time;
>
> b.     Whether the post-shift time Rule 23 North Carolina Class members spend on shutdown and logout activities is compensable time; and
>
> c.     Whether Defendant's non-payment of wages for all compensable time amounted to a violation of North Carolina wage and hour laws.

96.     Plaintiff Matthews's claims are typical of those of the Rule 23 North Carolina Class in that they and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and

systemic payroll policies and practices. Matthews's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

97.     Plaintiff Matthews will fully and adequately protect the interests of the Rule 23 North Carolina Class and she retained counsel who are qualified and experienced in the prosecution of North Carolina wage and hour class actions. Neither Matthews nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

98.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

99.     This case will be manageable as a Rule 23 Class action. Plaintiff Matthews and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

100.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins.*

*Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

101. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I
### (29 U.S.C. § 216(b) Collective Action)

### <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT,<br>29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME</u>

102. Plaintiffs re-allege and incorporates all previous paragraphs herein.

103. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

104. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

105. At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

106. Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

107. Plaintiffs either: (1) engaged in commerce; or (2) engaged in the

production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

108.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

109.   At all times relevant to this action, Defendant required Plaintiffs and all the proposed FLSA Collective members to perform thirteen (13) to fifty-two (52) minutes of uncompensated pre- and post-shift work, per shift, and Defendant failed to pay these employees the federally mandated overtime compensation for all work performed.

110.   The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

111.   In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. § 207.

112.   Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for its Remote

Associates to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for these work activities, but did not.

113.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Nationwide Class Action)

## BREACH OF CONTRACT

114.    Plaintiff Matthews re-alleges and incorporates all previous paragraphs herein and further allege as follows.

115.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff Matthews and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Matthews and the Rule 23 Nationwide Class members performed on behalf of Defendant.

116.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff Matthews, has an hourly rate of approximately $11.00 per hour.

117.    Plaintiff Matthews and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the

contract by doing their jobs and carrying out the work they performed each shift including the unpaid off-the-clock work that was required of them in connection with pre-shift, technical downtime, and post-shift work activities, described herein.

118. By not paying Plaintiff Matthews and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Matthews and each member of the Rule 23 Nationwide Class.

119. Plaintiff Matthews and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims).

120. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff Matthews and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

121. As a direct and proximate result of Defendant's contractual breaches, Plaintiff Matthews and every other member of the Rule 23 National Class were damaged in an amount to be determined at trial.

122. These claims are appropriate for class certification under Rule 23(b)(2)

and (b)(3) because the law of contracts is substantially the same in North Carolina as it is in the other states from which the Rule 23 National Class members reside.

## COUNT III
### (Rule 23 North Carolina Class Action)

### VIOLATIONS OF NORTH CAROLINA WAGE AND HOUR ACT, N.C. GEN. STAT. §§ 95-25.1, *et seq.*

123.  Plaintiff Matthews re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

124.  At all times relevant to the action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. §§ 95-25.1, *et seq.*, and Plaintiff Matthews and the Rule 23 North Carolina Class members are employees entitled to the NCWHA's protections.

125.  The NCWHA entitles employees to compensation for every hour worked in a workweek.  *See* N.C. Gen. Stat. § 95-25.3.

126.  The NCWHA entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week."  *See* N.C. Gen. Stat. § 95-25.4.

127.  Defendant, Plaintiff Matthews, and the Rule 23 North Carolina Class members are "employers" and "employees" for the purposes of the NCWHA.

128.  Defendant violated the NCWHA by regularly and repeatedly failing to compensate Plaintiff Matthews and the Rule 23 North Carolina Class for the time

spent on the work activities described in this Complaint.

129.   As a result, Plaintiff Matthews and the Rule 23 North Carolina Class have and will continue to suffer loss of income and other damages.  Accordingly, Matthews and the Rule 23 North Carolina Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the NCWHA at an amount to be proven at trial.  *See* N.C.G.S.A. § 95-25.22.

WHEREFORE, Plaintiffs request the following relief:

    a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Matthews's breach of contract claim (Count II);

    c.    An Order certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Matthews's breach of contract claim (Count III);

    d.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 Nationwide Class members, and Rule 23 North Carolina Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

    e.    An Order designating the Plaintiff Matthews as representative of the FLSA Collective and the Rule 23 Nationwide Class; and

undersigned counsel as Class counsel for the same;

f. An Order designating Plaintiff Carla Matthews as representative of the Rule 23 North Carolina Class; and undersigned counsel as Class counsel for the same;

g. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

h. An Order declaring Defendant's violations of the FLSA were willful;

i. An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

j. An Order declaring that Defendant violated the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. §§ 95-25.1, *et seq.;*

k. An Order declaring that Defendant's violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. §§ 95-25.1, *et seq.* were willful;

l. An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the FLSA Collective, the Rule 23 Nationwide Class, and the Rule 23 North Carolina Class the full amount of damages and liquidated damages available by law;

m. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

n. An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

o. An Order awarding such other and further relief as this Court deems appropriate.

# JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: July 14, 2017                Respectfully Submitted,

                                       */s/ Edward B. Davis*
                                       Edward B. Davis, NC Bar No. 27546
                                       BELL DAVIS PITT, P.A.
                                       227 W. Trade Street, Suite 1800
                                       Charlotte, North Carolina 28202
                                       ward.davis@belldavispitt.com
                                       (704) 227-0129

                                         *Local Counsel for Plaintiffs*

                                       Jesse L. Young (*Pro Hac Vice Anticipated*)
                                       Charles R. Ash, IV (*Pro Hac Vice Anticipated*)
                                       SOMMERS SCHWARTZ, P.C.
                                       One Towne Square, Suite 1700
                                       Southfield, Michigan 48076
                                       248-355-0300
                                       jyoung@sommerspc.com
                                       crash@sommerspc.com

                                         *Trial Counsel for Plaintiffs*

32